**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| CHRISTA WARD, | ) | |
|---|---|---|
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 10-240** |
| | ) | **Chief Judge Lancaster** |
| **MICHAEL J. ASTRUE** | ) | |
| **COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Gary L. Lancaster,
Chief Judge                                September ___ 7 , 2010

### I.   Introduction

Plaintiff Christa Ward ("Ward") brings this action pursuant
to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review
of the final decision of the Commissioner of Social Security
("Commissioner") denying her applications for disability
insurance benefits ("DIB") and supplemental security income
("SSI") benefits under Titles II and XVI of the Social Security
Act ("Act") [42 U.S.C. §§401-433, 1381-1383f].  For the reasons
that follow, Ward's motion for summary judgment will be denied,
the Commissioner's motion for summary judgment will be granted,
and the administrative decision of the Commissioner will be
affirmed.

## II. Procedural History

Ward protectively applied for DIB and SSI benefits on August 9, 2007, alleging disability as of June 1, 2006. (R. at 119-25). The applications were administratively denied on January 16, 2008. (R. at 65-86). Ward responded on February 8, 2008, by filing a timely request for an administrative hearing. (R. at 87).

On May 11, 2009, a hearing was held in Morgantown, West Virginia before Administrative Law Judge Richard D. Brady (the "ALJ"). (R. at 27). Ward, who was represented by a non-attorney who was eligible to receive direct fee payment, appeared and testified. (R. at 31-52). Eugene Chuchman, an impartial vocational expert (the "VE"), also testified at the hearing. (R. at 52-59).

In a decision dated July 16, 2009, the ALJ determined that Ward was not "disabled" within the meaning of the Act. (R. at 11-18).

The Appeals Council denied Ward's request for review on January 28, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1-3). Ward commenced this action on February 19, 2010, seeking judicial review of the Commissioner's decision. (Doc. No. 1). Ward and the Commissioner filed motions for summary judgment on June 16,

2010, and July 16, 2010, respectively. (Doc. Nos. 9 & 14).
These motions are the subject of this memorandum opinion.

## III. **Standard of Review**

This Court's review is limited to determining whether the
Commissioner's decision is "supported by substantial evidence."
42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.
1994). The Court may not undertake a *de novo* review of the
Commissioner's decision or re-weigh the evidence of record.
*Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d
Cir. 1986). Congress has clearly expressed its intention that
"[t]he findings of the Commissioner of Social Security as to any
fact, if supported by substantial evidence, shall be
conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not
mean a large or considerable amount of evidence, but rather such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552,
565 (1988) (internal quotation marks omitted). As long as the
Commissioner's decision is supported by substantial evidence, it
cannot be set aside even if this Court "would have decided the
factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358,
360 (3d Cir. 1999). "Overall, the substantial evidence standard
is a deferential standard of review." *Jones v. Barnhart*, 364
F.3d 501, 503 (3d Cir. 2004).

3

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777(3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

4

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## IV. Discussion

In his decision, the ALJ determined that Ward met the insured status requirements through December 31, 2009. (R. at 13). He also determined that Ward had not engaged in

6

substantial gainful activity subsequent to her alleged onset date. (*Id.*). Ward was found to be suffering from bipolar disorder and borderline personality disorder. (R. 13-14). The ALJ also noted that Ward had been diagnosed with alopecia and was obese. (*Id.*). Her bipolar disorder and borderline personality disorder were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.15209(c) and 416.920(c). (*Id.*). The ALJ concluded that Ward's impairments did not meet or medically equal an impairment listed within 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). (R. at 14).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Ward's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, unskilled work; should not work in or around crowds; should have no more than occasional interaction with the general public or co-workers and should not have to work in close proximity to co-workers. (R. at 14).

Ward was born on September 16, 1976, making her twenty-nine years of age as of her alleged onset date and thirty-two years of age as of the date of the hearing. (R. at 16, 119-25). She

7

was classified as a "younger individual" under the Commissioner's regulation. 20 C.F.R. §§ 404.1563, 416.963. (R. at 20). She had a high school education and the ability to communicate in English. (*Id.*). Given the applicable RFC and vocational assessments, the ALJ determined that Ward could not return to her past relevant work as a bakery clerk, data entry clerk, deli clerk, inspector for a sewing factory, order processor, sales clerk, shipping and receiving clerk, switchboard operator, office clerk, or nurses' aid. (R. at 16, 54-55). Nevertheless, the ALJ concluded that Ward could work as a scrap sorter, machine cleaner, or type copy examiner. (R. at 17). The VE's testimony established that these jobs existed in the national economy for the purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382(a)(3)(B). (R. at 55-57).

Ward's applicable medical record begins in July 2006 when she began seeking treatment at the Centerville Clinic ("Centerville"). (R. at 215-16). Ward complained of self-esteem issues caused by her alopecia. (R. at 215). She presented with a depressed mood and was tearful. (*Id.*). Ward was prescribed Paxil for depression and referred to a dermatologist for her alopecia. (R. at 216).

Ward returned to follow-up in August 2006 and reported her mood was slightly more balanced and her mood swings were not as

8

dramatic. (R. at 228). She was advised to return in six to eight weeks. (*Id.*). In November 2006, Ward returned and complained of fatigue, depression, hopelessness, worthlessness, and anhedonia. (R. at 218). The evaluation noted psychomotor retardation with normal grooming. (*Id.*). Ward's Paxil dosage was increased. (*Id.*).

Ward had further appointments at Centerville. In January 2007, she complained of a rash on her stomach. (R. at 220). At the appointment, Joseph Chadwick, II, M.D., noted her mood was better and continued her prescription for Paxil. (R. at 221). In April 2007, Ward returned because her blood pressure was significantly elevated. (R. at 224). In May 2007, Ward reported a "fluttering" in her chest. (R. at 226). She also reported excessive stress because her fiancé was missing. (*Id.*). Dr. Chadwick assessed an anxiety disorder. (R. at 227).

Ward was examined by Vickie Hodge-Kendi, M.S. in April 2007. (R. at 227). Ward reported Dr. Chadwick believed she was "bipolar". (R. at 232). Ward's mental status examination revealed her impulse control, insight, and judgment were intact. (R. at 237). Her speech, language, thought processes, attention, concentration, and intelligence were all noted to be within normal limits. (R. at 236-37). Ms. Hodge-Kendi noted Ward was cooperative, but depressed and anxious and experienced

9

increased mood swings, manic behaviors, aggression, severe self-esteem issues, and sleep problems. (R. at 237-38). She diagnosed Ward with mood disorder and assessed a global assessment of functioning[1] of 45[2]. Ms. Hodge-Kendi saw Ward three times throughout the early months of 2008. (R. at 292). During these appointments, Ward complained of an increase in depressive symptoms. (R. at 292-294).

Ward saw Pushkalai Pillai, M.D., for psychiatric medication management, beginning in May 2007. (R. at 246-47). Dr. Pillai diagnosed mood disorder, borderline personality disorder, alopecia, and obesity. (R. at 247). He also assessed a GAF of 65[3]. (*Id.*). Ward attended five fifteen minute follow-up

---

[1]A global assessment of functioning ("GAF") score is used to report an individual's overall level of functioning with respect to psychological, social, and occupational functioning. The GAF scale ranges from the lowest score of 1 to 100, the highest score possible. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Diagnostic and Statistical Manual of Mental Disorders. ("DSM-IVR") 34 (4th ed. 2000).

[2] A GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IVR at 32.

[3] A GAF between 61 and 70 indicates "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IVR at 32.

evaluations with Dr. Pillai from May 2007 through September
2007. (R. at 248-49). In June 2007, Dr. Pillai noted Ward was
doing better on Prozac and discontinued her prescription for
Paxil. (R. at 248). In September 2007, Dr. Pillai noted Ward
was "doing well" and that her anger issues had improved. (R. at
249).

On December 22, 2007, Thomas Andrews, Ph.D., performed a
consultative psychological evaluation of Ward in order to assess
the degree to which her mental impairments were limiting her
ability to engage in work-related activities. (R. at 250-256).
Dr. Thomas reported that Ward was "moderately" limited in her
abilities to carry out detailed instructions, make judgments on
simple work-related decisions, interact appropriately with co-
workers, and respond appropriately to work pressures and changes
in a usual work setting. (R. at 250). He indicated Ward was
only "slightly" limited in her abilities to understand and
remember detailed instructions and interact appropriately with
the public and with supervisors. (Id.). Dr. Andrews concluded
that when criticized or mildly confronted, Ward "has a tendency
to become verbally explosive (and) abusive." (R. at 256). He
also indicated Ward was "able to perform all tasks and respond
to questions without any unusual impairment to her
concentration, focus, or attention." (Id.).

11

Sharon Becker Tarter, Ph.D., a non-examining medical consultant adopted Dr. Andrews' findings on January 15, 2008. (R. at 257-58). After reviewing the documentary evidence of Ward's impairments, Dr. Tarter indicated that she was "moderately" limited in carrying out detailed instructions, maintaining attention and concentration for extended periods, accepting instruction and responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting. (R. at 258). Dr. Tarter noted that Ward remained capable of understanding and remembering instructions, concentrating, interacting with others, and adapting to changes in the workplace. (R. at 259). Dr. Tarter did not asses any restrictions in regards to Ward's understanding and memory. (*Id.*). Dr. Tarter concluded that Ward was able to meet the basic mental demands of competitive work on a sustained basis. (*Id.*).

In April 2009, Dr. Muhammad Shalkh completed a mental RFC questionnaire at the request of Ward's representative. (R. at 295-98). Dr. Shalkh indicated Ward had been seeing an outpatient psychiatrist at Cornerstone Care on a monthly basis since November 10, 2008. (R. at 295). Dr. Shalkh diagnosed Ward with mixed bipolar disorder and borderline personality disorder with a GAF of 50. (*Id.*). Dr. Shalkh prescribed Zypreza and continued Ward's prescription for Lithium because

12

she indicated that her anger had become less frequent, but more intense. (*Id.*).

Dr. Shalkh indicated that Ward would be unable to meet competitive standards in sustaining an ordinary routine without special supervision. (R. at 297). He also assessed that Ward was "seriously limited but not precluded" in several areas: her ability to understand and remember very short and simple instructions; maintain attention for a two hour segment; maintain regular attendance; work in coordination with or in proximity to others; complete a normal work week without interruptions; perform at a consistent pace; ask simple questions; respond appropriately to changes in routine and work stress; and get along with co-workers. (*Id.*). He also determined that Ward would be absent from work more than four days per month. (R. at 298).

In support of her motion for summary judgment, Ward first argues that the ALJ erred in failing to provide adequate rationale for rejecting her testimony. (Doc. No. 12, 4).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence.

*Wier*, 734 F.2d at 961; *Cotter*, 642 F.2d at 705. He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence. *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations." *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F.3d at 433.

Where a claimant's testimony as to symptoms is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence.* *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985). In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that

support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112,119-20 (3d Cir. 2000). *See* Social Security Ruling ("SSR") 96-7 (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviews the weight the adjudicator gave to the individual's statements and the reasons for that weight.")

Here, the ALJ determined that Ward's testimony was partially credible because although she testified she had problems holding a job because of her anger, she worked twenty-eight hours a week as a nurses' aid. (R. at 15). Work by a claimant after the alleged onset is probative evidence that the claimant may be capable of working. *Sigmon v. Califano*, 617 F.2d 41,42-43 (4th Cir. 1980), 20 C.F.R. §§ 404.1571, 416.971. The ALJ noted that Ward's current position accommodated her anger because she was on a routine. (R. at 15). However, he noted Ward complained she became anxious working with many different people. Therefore, he accommodated aspects of Ward's testimony in her RFC by limiting her to simple, unskilled work and occasional interaction with the public and co-workers. (*Id.*).

15

The ALJ also noted that Ward testified that her medications helped to control her problems with anger and frustration. (R. at 15). Also, Ward had never had law enforcement or legal involvement because of her anger outbursts and she "presented well at the hearing, having no observable physical or mental problems or limitations." (*Id.*). The ALJ clearly weighed evidence against Ward's testimony and provided specific reasons for determining her testimony was not credible to the extent it was inconsistent with her RFC. (*Id.*). The rest of his decision further supports his finding. (R. at 15-18). Therefore, the ALJ did not err in his analysis of Ward's credibility. *Cotter*, 642 F.2d at 705.

Ward also argues that the ALJ erred in rejecting Dr. Shalkh's opinion regarding her mental limitations. (Doc. No. 12, 8).

The claimant bears the ultimate burden of proving disability in Social Security disability cases. 42 U.S.C. §§ 423(d)(5)(A)(providing that "[a]n individual shall not be considered under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner may require."); 20 C.F.R. §§ 404.1512(a), 416.912(a). The ALJ as fact finder evaluates the record and weighs the relative worth of the evidence as a necessary part of determining

disability. 20 C.F.R. §§ 404.1520(a)(3), 404.1527(c), 416.920(a)(3), 416.927(c).

Treating physicians' opinions are not automatically controlling, but are entitled to significant weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999), *quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000), *quoting Plummer*, 186 F.3d at 429. Furthermore, the ALJ retains the duty to analyze treating source opinions and judge whether they are well-supported by the medical evidence and consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The more supported and consistent an opinion is with the record as a whole, the more weight will be given to the opinion. 20 C.F.R. §§ 404.1527(d)(3),(4), 416.927 (d)(3),(4), *See* SSR 96-2 ("A statement by a physician or other treating source can be given weight only to the extent it is supported by medical

findings.). An ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429. However, the ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-18.

Here, the ALJ gave less weight to Dr. Shalkh's assessment, especially his finding that Ward would miss more than four days of work each month because of her mental limitations. (R. 14-16). A treating physician's opinion is entitled to controlling weight only when it is consistent with other evidence of record and is well-supported. 20 C.F.R. §§ 404.1527(d)(3)-(4), 416.927(d)(3)-(4). The ALJ found that Dr. Shalkh's assessment was neither consistent with the other evidence nor well-supported by his own findings. (R. at 14-16). Specifically, the ALJ noted that Dr. Shalkh's assessment lacked objective support in the treatment records because they did not show significant abnormal clinical signs and appeared to be based on Ward's subjective complaints. (R. at 14). Furthermore, despite assessing limitations indicating that Ward would be unable to

meet competitive demands in several areas, Dr. Shalkh noted that she showed good stability on her medications and he did not document any clinical signs of significant abnormalities. (R. at 295-98). The ALJ addressed Dr. Shalkh's notation that Ward was irritable and in some distress, but noted that she had been off of medications for several months and the remainder of the mental status evaluation was normal. (R. at 15). The ALJ found there was "no objective evidence of the laundry list of signs and symptoms checked on" Dr. Shalkh's assessment. (R. at 16).

Dr. Shalkh's assessment was also inconsistent with the significantly less restrictive limitations assessed by Drs. Andrews and Tarter. (R. at 250-260, 295-98). Unlike Dr. Shalkh, Dr. Tarter concluded, consistent with Dr. Andrews' examination, that Ward was able to meet the basic demands of work. (R. at 250-25309). Therefore, since Dr. Shalkh's opinion was not consistent with the record and was not well-supported, it was not entitled to controlling weight. 20 C.F.R. §§ 404.1527(d)(3)-(4), 416.927(d)(3)-(4).

An ALJ may properly weigh conflicting medical opinions. *Morales*, 225 F.3d at 317-18. Here, the ALJ relied on contrary medical evidence and opinions of record including Drs. Andrews, Tarter, and Pillai in his decision to reject Dr. Shalkh's

19

assessment. The ALJ noted that he gave great weight to the assessments of Drs. Andrews and Tarter because he found they were well-supported by the medical evidence of record "showing that the claimant has received sporadic mental health treatment that has provided good control when compliant, as well as the claimant's significant work activity over the past year. . . ." (R. at 14).

Dr. Andrews' consultative examination was essentially normal. (R. at 250-256). He documented Ward's mood was within normal limits during the examination. (R. at 255). Ward was also able to perform all tasks and respond to questions without any impairments to her concentration, focus, or attention. (R. at 256). The ALJ accepted Dr. Andrews' assessment that Ward had moderate restrictions interacting appropriately with co-workers, responding appropriately to changes in a routine work setting, and responding appropriately to work pressures in a usual work setting by limiting Ward's RFC to no more than occasional interaction with the public, co-workers, and supervisors. (R. at 14, 250). Ward was also limited to work not in close proximity or coordination with others. (R. at 14).

The ALJ also relied on the opinion of Dr. Tarter who concluded based on her review of the evidence of record that

20

Ward was not significantly limited in most areas of mental functioning. (R. at 257-58). Dr. Tarter's assessed moderate limitations of carrying out detailed instructions, maintaining attention and concentration for extended periods of time, accepting instruction for and responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting were incorporated by the ALJ in Ward's RFC. (R. at 14, 258). Unlike Dr. Shalkh, Dr. Tarter found that Ward would be able to work within a normal schedule and within a consistent pace and would not require special supervision. (R. at 259). The ALJ weighed the conflicting medical opinions and chose to give greater weight to Drs. Andrews and Tarter than Dr. Shalkh. (R. at 11-18). He did not reject any medical evidence for no reason or for the wrong reason. *Morales*, 225 F.3d at 317-18. Therefore, his decision is supported by substantial evidence and will be affirmed. *Id.*

## V. Conclusion

The ALJ based his decision primarily on the medical opinions of Drs. Andrews and Tarter. (R. at 14-17). It is firmly established that an ALJ may weigh medical opinions but may not reject a treating physician's opinion without citing contrary medical evidence. *Morales*, 225 F.3d at 317-18. The ALJ addressed all medical evidence of record and where Dr. Shalk's

21

opinion conflicted with other medical opinions, he chose to reject Dr. Shalkh's assessment. (R. at 11-18).

The Commissioner's decision that Ward was not disabled is supported by substantial evidence within the meaning of § 405(g).

AND NOW, this 7th day of September, 2010, IT IS HEREBY ORDERED that the motion for summary judgment filed by the Plaintiff (Doc No. 9) is DENIED, and that the motion for summary judgment filed by the Defendant (Doc No. 14) is GRANTED. In accordance with the fourth sentence of 42 U.S.C. §405(g), the administrative decision of the Commissioner of Social Security is hereby AFFIRMED.

BY THE COURT:

Gary L. Lancaster
Chief United States District Judge

22